UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) CRIMINAL NO. 2:16-CR-158-DBH |
| KRISTEN ZUSCHLAG AND | ) |
| ROBERT ZUSCHLAG, | ) |
| | ) |
| DEFENDANTS | ) |

**ORDER ON JOINT MOTION TO DISMISS INDICTMENT**

This is a criminal prosecution centered on health care fraud charges[1] in connection with the MaineCare program.[2] The two individual defendants, Kristen and Robert Zuschlag, husband and wife, owned companies (Freeport Transit (FTI) and C3 Transport) that provided medical transportation services for MaineCare members. The federal prosecution started with a two-count indictment against Kristen Zuschlag on November 15, 2016 (ECF No. 1). Since then, there have been four superseding indictments. The Fourth Superseding Indictment filed on November 28, 2017 (ECF No. 113), contains fifteen counts and two forfeiture allegations. The defendants have moved to dismiss the first four Counts, namely, false statement relating to a health care benefit program (Count One, Kristen Zuschlag); obstruction of a federal audit (Count Two, Kristen

---

[1] There are also related tax and money laundering charges.
[2] MaineCare is a health care benefit program funded with state and federal dollars. MaineCare, Benefits.Gov, https://www.benefits.gov/benefits/benefit-details/1630 (last visited May 30, 2018).

Zuschlag); conspiracy to commit health care fraud (Count Three, both defendants); and health care fraud (Count Four, both defendants). They seek dismissal of all four Counts on account of prosecutorial delay;[3] and counts Three and Four on account of "duplicity" because, they say, each of those Counts charges three single and distinct crimes as a single offense, and two of the three are barred by the statute of limitations. None of the parties has requested oral argument. I **DENY** the motion to dismiss so far as it is based on prosecutorial delay. I do need further explanation, however, of the relationship and significance of the most recent addition of an additional object for the conspiracy, a change in the date the conspiracy began, and additional manner and means— particularly, allegedly false testimony by both defendants at a state administrative hearing in March of 2010, conduct that would otherwise be barred from criminal prosecution by the statute of limitations. The Clerk's Office shall schedule oral argument on that remaining issue.

*Prosecutorial Delay*

The defendants recognize that to secure a Fifth Amendment due process dismissal of an indictment for prosecutorial delay when the statute of limitations has not expired, they must show that "the delay (1) caused substantial prejudice to the accused's rights to a fair trial, and (2) was an intentional maneuver by the government to gain a tactical advantage over the accused." Defs.' Mot. 11 (ECF No. 137) (citing United States v. Lovasco, 431 U.S. 783, 790 (1977); United States

---

[3] A section heading in their brief says "The Indictment" should be dismissed for prosecutorial delay, Defs.' Mot. 11 (ECF No. 137), but they only assert prejudice from the delay as to the first four counts, id.

2

v. Marion, 404 U.S. 307, 324 (1971); and United States v. DeCologero, 530 F.3d 36, 78 (1st Cir. 2008)). The defendants devote most of their argument to the substantial prejudice element and conclude: "In this case, the Defense has established actual prejudice. The government should now be called to explain the delay between the completion of the investigation and the bringing of criminal charges." Defs.' Mot. 20.

Unfortunately for the defendants, the burden on *both* elements rests with them, United States v. Irizarry-Colon, 848 F.3d 61, 70 (1st Cir. 2017), as they recognize in their brief. Defs.' Mot. 11. In this case they have advanced no showing of an intentional government maneuver to gain a tactical advantage. They do cite an earlier 2015 decision where the First Circuit stated in dictum that "there may be instances when prosecutorial delay will be sufficiently egregious to support a due process violation even absent tactical purpose." United States v. Ramos-Gonzalez, 775 F.3d 483, 491 (1st Cir. 2015) (citing Lovasco, 431 U.S. at 795 n.17). They then cite Fourth, Seventh, and Ninth Circuit cases that, they say, allow dismissal for "negligence or reckless disregard for the circumstances as the prosecutor knew them to be" without showing an improper tactical purpose. Defs.' Mot. 19-20. But the 2015 First Circuit decision did not involve an egregious delay, and the court did not define the term.[4]

---

[4] The Ramos-Gonzalez dictum rested on footnoted language in the Supreme Court's Lovasco decision. The Lovasco language was not a holding but simply the Court's explanation of what the Government had *conceded* in Lovasco:
> In Marion we noted with approval that the Government conceded that a "tactical" delay would violate the Due Process Clause. The Government renews that concession here, and expands it somewhat by stating: "A due process violation might also be made out upon a showing of prosecutorial delay incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there

3

Instead, in its later 2017 decision, Irizarry-Colon, the First Circuit dropped any reference to that possibility and reverted to its usual language that a defendant must prove tactical delay by the government to justify dismissal. 848 F.3d at 70. I apply the Irizarry-Colon analysis and conclude that in the absence of *any* assertion that the government's conduct here was an intentional maneuver to gain a tactical advantage, the motion to dismiss for prosecutorial delay must fail.

That should dispose of this part of the motion. But in the event that the First Circuit decides that in some cases defendants need not show that the government engaged in an intentional maneuver to gain a tactical advantage, I assess the defendants' substantial prejudice assertions as well. I certainly understand the defendants' frustration over the delay here. In 2010 they won a contested recoupment hearing where the State had attempted to recover $283,000 against them for improper billing from 2004 to 2009. MaineCare officials were upset with the ruling, calling it "difficult to accept," Defs.' Ex. 2 (ECF No. 137-2), and in 2012 an auditor, Michael Bishop, referred the matter to the Maine Attorney General for criminal prosecution. But in May 2013 the Maine Attorney General's Office declined to prosecute ("no chance that we could pursue any criminal case in this matter," Reply Ex. 5 (ECF 148-5)). Bishop then referred the matter to federal authorities later in 2013, where the matter languished

---

existed an appreciable risk that delay would impair the ability to mount an effective defense." As the Government notes, however, there is no evidence of recklessness here.
431 U.S. at 795 n.17 (citations omitted). These defendants have not asserted that the prosecution's delay here was "incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense."

4

because of backlogs in the U.S. Attorney's office. After consenting to two extensions of the statute of limitations[5] in the hope that federal prosecution would be declined, the defendants refused further extensions and on November 15, 2016, the first indictment (against Kristen Zuschlag) was filed.

But despite the frustrations of this chronology for the defendants, they have not established substantial prejudice resulting from the delay, as I now describe.

### *Counts One and Two*

On Counts One and Two, the defendants acknowledge that Kristen Zuschlag (the only defendant on those two counts) "is at least partially able to defend the allegation that Mrs. Zuschlag provided false documents, with the use of expert testimony." Defs.' Mot. 11. But they say that "the unavailability of common carrier shipping records, due to the passage of time, severely hampers Mrs. Zuschlag's ability to defend the factual claim that she provided false documents to [MaineCare's Program Integrity Unit]." Id. at 11-12. This seems to be an argument that because the Indictment filed on November 15, 2016, asserts that she provided false documents on November 15, 2011, an earlier shipping date would be a defense to that charge and, moreover, that an earlier shipping date would provide a complete statute of limitations defense.[6]

---

[5] No party has argued that these extensions have any impact on the issues I am considering on this motion.

[6] The federal statute of limitations for criminal offenses is generally five years. 18 U.S.C. § 3282(a). The defendants cite United States v. Prosperi, 573 F. Supp. 2d 436, 440 (D. Mass. 2008), for the proposition that the crime of mail fraud is complete upon placing documents with a common carrier. Defs.' Mot. 9 n.3. The two counts against Kristen Zuschlag are not mail fraud (instead they are false statement relating to a health care benefit program and obstruction of a federal audit), but the government has not disagreed with the defendants' reasoning about when the statute of limitations started to run.

The defendants acknowledge that Bishop says that he received the allegedly false documents on November 16, 2011, id. at 2, 8, and that there is a date stamp for that date, id. at 9; Defs.' Reply 4 (ECF No. 148). Presumably the defendants would like common carrier records to show that the allegedly false documents were actually shipped November 14 or earlier. But, they say, common carriers do not have records going back that far. Defs.' Mot. 9 & n.3; Decl. of Kristen Zuschlag ¶ 13, Defs.' Ex. 6 (ECF No. 137-6) ("After I was initially indicted, on November 15, 2016, I attempted to obtain records from UPS and Federal Express that would show the dates of documents having been shipped to Michael Bishop of the MaineCare Program Integrity Unit . . . I was advised that such records were no longer available.").

The government asserts that "[o]n November 15, 2011, the auditor [Bishop] spoke with Kristen Zuschlag who informed the auditor that she had mailed the requested documents," Gov't Resp. 7 (ECF No. 144), and it provides an auditor's log in support of the assertion. Gov't Ex. 7 (ECF No. 145-6). The defendants have not directly responded to this assertion in their reply memorandum. Of course, Bishop's statement as the government reports it does not state that Kristen Zuschlag told Bishop *when* she had shipped the documents in question. But nowhere do the defendants assert that Kristen Zuschlag or anyone else will testify that she actually shipped them earlier than November 15. The defendants say only that "there is no objective evidence of when the documents were shipped, which is the critical fact that Mrs. Zuschlag is missing due to the government's delay." Defs.' Reply 4 (emphasis in original). That is not enough to support substantial prejudice on these two Counts. On this record I have no

basis to conclude that common carrier records, if they existed, would show an earlier shipping date. The person most likely to know the actual shipping date is the defendant Kristen Zuschlag. She can still assert her statute of limitations defense on these two Counts at trial.[7]

### *Counts Three and Four*

Counts Three and Four are the conspiracy and health care fraud charges against both defendants over allegedly fraudulent billing for MaineCare members whom the defendants' companies transported. The Fourth Superseding Indictment ¶ 7 charges a conspiracy going back to July 2009. The defendants argue that the passage of time makes it difficult to identify the riders in question and the riders' medical needs at that time (the period from 2009 through 2013). Defs.' Mot. 13, 16. They argue that they no longer have enough of their own relevant records and that MaineCare regulations required them to keep their records only for three years. Decl. of Robert Zuschlag ¶¶ 8-11, Defs.' Ex. 5 (ECF No. 137-5); Decl. of Kristen Zuschlag ¶¶ 10-12, 14, Defs.' Ex. 6. But the government points to their MaineCare provider agreements that required them to keep their records for at least *five* years and, beyond then, until the end of an audit, if later. Gov't Resp. 15; Gov't Ex. 1 (ECF No.145). The government asserts that audits were initiated in 2011 and 2013 that did not end, but led instead to the criminal investigation that resulted in this criminal prosecution. Gov't Resp. 15. In their Reply, the defendants have not responded to this assertion, and they

---

[7] If she does, the burden of proof may lie with the government to show that she acted within the limitations period. See Musacchio v. United States, 136 S. Ct. 709, 718 (2016).

7

recognize in their motion that an audit occurred in 2011. Defs.' Mot. 12. If, in the face of recordkeeping obligations, the defendants failed to keep relevant records,[8] I do not attribute any resulting prejudice to the prosecution's delay, since the government could reasonably assume that the defendants would comply with their recordkeeping obligations.[9] Cf. United States v. Carruth, 699 F.2d 1017, 1019 (9th Cir. 1983) ("To allow [the defendant's] prejudice claim here would be to hold that those under criminal investigation have a right to destroy documents and then to argue that they are prejudiced because the documents are unavailable to support their defense. This we refuse to do.").

The defendants also argue that because of the passage of time, other comparable companies no longer have records that could support the defendants' practices as generally acceptable, Defs.' Mot. 14-15. As the government points out, however, those companies also stated that they did not engage in the same activity as the defendants' companies, and therefore their records would not be helpful to the defendants. Gov't Resp. 13; see also Defs.' Mot. 14-15 (same). The defendants attempt to thwart this argument by saying that such statements by other companies were made "presumably out of fear that they would become the target of a PIU investigation." Defs.' Mot. 14. This "presumably" comment is only speculation that does not support a finding of substantial prejudice.

---

[8] I do not address the government's assertion that I should discount the claim of destroyed records because of the defendants' ability to produce records under other circumstances. Gov't Resp. 13-14.

[9] They also assert that the government has failed to specify the allegedly fraudulent rides, Defs.' Mot. 3, a dispute on which I reserved judgment in an earlier Order on Motion for Reconsideration of Denial of Motion for Bill of Particulars (ECF No. 121). The government says that it has now provided that specification, Gov't Resp. 16, and the defendants have not disagreed in their Reply.

The defendants also assert, without support, that they cannot admit into evidence information from a Regional Transportation Program (RTP) computer database concerning the referral of ambulatory riders to wheelchair companies like their company and that they need the underlying documents, which are no longer available. Defs.' Mot. 13-14. The government disagrees. Gov't Resp. 13. It cites Fed. R. Evid. 902(13)-(14), and the summary evidence rule (Rule 1006), and states that it intends to introduce some of the data itself. The defendants' mere assertion that they cannot get information from the RTP database into evidence does not—without explanation why that is so—establish substantial prejudice.

Finally, the defendants argue that a favorable witness who, they say, approved their billing practices for MaineCare, has died. Defs.' Mot. 15. But they attach the Hearing Officer's Report of the 2010 hearing that stated that even in 2010 this witness could not recall making that representation. Defs.' Ex. 1 at 5, 7, 8 (ECF No. 137-1).[10] The government has attached a partial transcript of the hearing where the defendants' then-lawyer said the same thing about the witness. Tr. at 38:7, Gov't Ex. 2 (ECF No. 145-1). The defendants have given no indication that her testimony would have changed had she lived.[11]

---

[10] The Hearing Officer stated that she did not appear as a witness at the 2010 hearing and as a result there was no evidence to contradict Mr. Zuschlag's testimony. Defs.' Ex. 1 at 7. The defendants won that administrative proceeding and were not required to disgorge the $283,000 sought in the PIU recoupment action.

[11] As I say later in this opinion, I do not know how the government proposes to prove that the defendants intentionally perjured themselves at the 2010 state administrative hearing, so I may need to revisit this issue if they propose to introduce evidence about what this or another MaineCare representative said to the defendants.

9

In short, the defendants' assertions, both singly and collectively, fail to establish substantial prejudice.

*Duplicity*

The First, Second, and Third Superseding Indictments charged that the purpose of the health care conspiracy charged in Count Three was as follows:

> 8. The purpose of the conspiracy was for the defendants to unlawfully enrich themselves by, among other things:
>
> (a) creating C3 Transport as a nominee for Freeport Transit in order to evade the MaineCare regulation that prohibited an FSTP from becoming a wheelchair van service provider;
>
> (b) submitting false and fraudulent claims to MaineCare on behalf of C3 Transport seeking payment for "door through door" wheelchair van services that were not medically necessary nor provided pursuant to MaineCare rules;
>
> (c) submitting false and fraudulent claims to MaineCare on behalf of C3 Transport for services not provided;
>
> (d) submitting false and fraudulent documents in support of submitted claims;
>
> (e) concealing their criminal activity by submitting false records to MaineCare's Office of Program Integrity, the U.S. Department of Health and Human Services, Office of Inspector General; and the MaineCare program;
>
> (f) diverting the proceeds of their fraud for their personal use in the form of compensation and other remuneration.

First (ECF No. 26), Second (ECF No. 37), and Third (ECF No. 88) Superseding Indictments ¶¶ 8(a)-(f). The obvious focus was C3 Transport. But the Fourth Superseding Indictment added an additional purpose as subparagraph (a), namely, "Submitting false and fraudulent claims to MaineCare on behalf of Freeport Transit seeking payment for 'attendant services' that were not allowed under MaineCare rules and when in fact no attendant was used" (and

10

renumbering the previously listed purposes accordingly as (b) through (g)). Fourth Superseding Indictment ¶ 8. It also charged that the conspiracy began in July rather than November 2009, id. ¶ 7, added two new factual assertions under the heading "Manner and Means":

> 9. It was part of this conspiracy that at the administrative hearing in March 2010, Robert Zuschlag and Kristen Zuschlag falsely testified under oath that Freeport Transit had received permission in 2003 to utilize the code for "attendant services". Robert Zuschlag further testified falsely that he stopped using the code for "attendant services" as a result of the audit.
>
> 10. It was part of the conspiracy that after the audit in July 2009 until August 1, 2010, Freeport Transit continued to bill MaineCare using the billing code for "attendant services" when in fact no attendant was used and MaineCare rules did not allow Freeport Transit to use this code.

Id. ¶¶ 9-10, and added a new paragraph 19: "It was further a part of the conspiracy that based upon the false and fraudulent claims submitted by Freeport Transit, MaineCare paid at least $283,000 from 2004-2009." Id. ¶ 19.

The government seems to be confused about what it has charged, asserting in its opposition that the charged conspiracy still "covers the period November 2009 through January 2017," even though it states in the next sentence of its opposition "that as part of the conspiracy, for the period July 2009 until August 2010, . . . FTI continued to use the improper billing code," Gov't Resp. 15, and despite its unequivocal assertion in the Indictment that the conspiracy began in July 2009, Fourth Superseding Indictment ¶ 7. The government also asserts that the defendants do not have to defend rides going back to 2001,[12] Gov't Resp.

---

[12] The defendants raise the 2001 date in their Motion, saying "Scheme One covers the time period from 2001 until 2010," Defs.' Mot. 21; see also id. at 9-10. The government advances January of 2001 as the date when FTI improperly started using the challenged billing code. Gov't Resp.

11

15, that "[t]he necessity for the rides that FTI provided prior to July 2009 are not involved in the charged conspiracy/scheme," id. at 16, and that paragraph 19's reference to earlier claims and amounts is simply to establish the amount that was at issue in the 2010 state administrative hearing where, the government asserts, the defendants testified falsely, an amount that should therefore be part of the loss. Id. at 15-16.[13]

The defendants say that Count Three of the Fourth Superseding Indictment now improperly charges three separate conspiracies and that Count Four, the health care fraud charge based on Count Three, improperly charges three separate schemes (the duplicity argument). All parties treat their arguments as equally applicable to both Counts, and I shall do the same. They argue that when the charges are broken down into three separate conspiracies or schemes, two of them are barred by the statute of limitations. They call them Scheme One: for Freeport Transit to obtain payment improperly for attendant services that were never provided (¶ 8(a) of the Fourth Superseding Indictment); Scheme Two: the fraudulent creation of C3 Transport and obtaining MaineCare approval for C3 Transport as a provider (¶ 8(b)); and Scheme Three: for C3 Transport to obtain payment for services that were not necessary or not provided (¶¶ 8(c)-(d)). I will follow that terminology.

---

4. But I do not see the year 2001 in the Fourth Superseding Indictment, and even the defendants say that they have to reconstruct information on rides going back only to 2009. Defs.' Mot. 13.
[13] It is not yet clear to me why the government thinks proving false testimony will alone support the recoupment of the $283,000, without also litigating whether the actual rides going back to 2004 were properly reimbursable. It is at least an interesting question whether the state hearing officer's decision that the billing code was improper, Defs.' Ex. 1 at 6, can have a collateral estoppel effect when the government is seeking to avoid his decision that MaineCare was estopped from seeking recoupment for use of that billing code.

The defendants argue that "Scheme Two, according to the Indictment, was that the Zuschlags lied to MaineCare in order to gain approval to be a wheelchair provider." Defs.' Mot. 22. They call that a "Right to Control Assets" scheme, citing <u>United States v. Binday</u>, 804 F.3d 558, 570 (2d Cir. 2015), and say that it was complete upon C3 Transport gaining approval to be a MaineCare provider effective in late 2009. Defs.' Mot. 22. They thus seek to distinguish Scheme Two from Scheme Three, C3 Transport's subsequent receipt of allegedly improper payments for services that were not necessary or not provided. I see no reason, however, why a jury should not be entitled to conclude that the fraudulent creation of C3 Transport, qualifying it with MaineCare, and then using C3 Transport to submit fraudulent billing is a single conspiracy, as the Fourth Superseding Indictment charges. Calling Scheme Two a "Right to Control Assets" scheme may show that there was criminal conduct at the very beginning of C3 Transport's relationship to MaineCare, but that does not prevent the conspiracy from having a broader purpose, namely to use the new entity to obtain fraudulent payments. <u>Binday</u> is not to the contrary.

The defendants do not claim that Scheme Three (C3 Transport's fraudulent billing) is barred by the statute of limitations. Because I conclude that, if the evidence follows the indictment, a jury could supportably find that Scheme Two and Scheme Three are a single conspiracy/scheme, Scheme Two is also not time-barred. Charging Scheme Two and Scheme Three in a single Count is not prohibited duplicity.

So-called Scheme One is different. It appears for the first time in the Fourth Superseding Indictment. Until then, the criminal conspiracy charge

focused on the activities of C3 Transport, and the government consistently alleged that the health care conspiracy began in November 2009, the date that MaineCare officials "officially notified Robert Zuschlag" that they were upholding their decision to seek recoupment for FTI's billings, whereupon the Zuschlags proceeded to create C3 Transport and secure its approval by MaineCare as a provider. First, Second, and Third Superseding Indictments ¶¶ 1(m)-(p).[14] The conspiracy charge did not then assert that the Zuschlags had acted illegally in submitting FTI's prior billings to MaineCare going back to 2004, or testified falsely at the March 26, 2010, state administrative hearing. According to the government, "[t]he most notable substantive change between the Superseding Indictment and the Fourth Superseding Indictment was the addition of the allegations relating to the alleged fraudulent testimony during the March 2010 administrative hearing." Gov't Resp. 1. If this newly-charged conduct is not part of a single overarching conspiracy that extends into the C3 Transport activities, then for it the applicable 5-year statute of limitations expired some time ago.

Whether the government can prove the conspiracy it has charged (rather than a different conspiracy) is usually a jury question and is dealt with by language in the jury charge or occasionally by a Rule 29 motion at the close of the government's case. But the defendants seek a ruling that the current charge presents a scenario that cannot permissibly be viewed as a single conspiracy. See United States v. Barrera, 444 Fed. App'x 16, 24 (5th Cir. 2011) ("In reviewing

---

[14] November of 2009 is also the date when, according to the government, Kristen Zuschlag ended her involvement in FTI. First, Second, Third, and Fourth Superseding Indictments ¶ 1(j). See infra note 16.

an indictment for duplicity, our task is not to review the evidence presented at trial to determine whether it would support charging several crimes rather than just one, but rather solely to assess whether the indictment itself *can be read* to charge only one violation in each count." (citation omitted)); cf. United States v. Trainor, 477 F.3d 24, 32 (1st Cir. 2007) (distinguishing duplicity and variance arguments and noting that the basis of a duplicity challenge is that "the indictment alone establishes reversible error on the conspiracy count because the two conspiracies were improperly joined in a single count").

The government says that it has properly charged a single overarching conspiracy covering the entire period, and relies upon the First Circuit decision in United States v. Portela, 167 F.3d 687, 695 (1st Cir. 1999), that "[t]o determine if the evidence supports finding a single conspiracy (that is to say, a single general agreement), courts have looked for (1) a common goal, (2) interdependence among the participants, and (3) overlap among the participants."[15] Interdependence and overlap are not an issue here and, the government says, the Zuschlags "had a common goal to unjustly enrich themselves." Gov't Resp. 18.[16] The government's argument is that the Zuschlags engaged in a multiple-object conspiracy/scheme to defraud MaineCare in how

---

[15] There are several more recent cases; generally they add that these three factors are not an exhaustive list. See, e.g., United States v. Monserrate-Valentin, 729 F.3d 31, 42-43 (1st Cir. 2013); United States v. Ciresi, 697 F.3d 19, 26 (1st Cir. 2012); United States v. Rivera-Donate, 682 F.3d 120, 129 (1st Cir. 2012); United States v. Dellosantos, 649 F.3d 109, 111 (1st Cir. 2011).

[16] I reject the defendants' argument that the Fourth Superseding Indictment does not establish that Kristen Zuschlag was involved in Scheme One. Defs.' Mot. 22-23. The Indictment alleges that she gave false testimony at the hearing, ¶ 9, and that she was a co-owner of FTI until November 2009, ¶ 1(j). She says in an affidavit that she was a shareholder only until July of 2003, Decl. of Kristen Zuschlag ¶ 3, Defs.' Ex. 6, *i.e.*, before the conspiracy allegedly started, but her role as a conspirator will be a question for the jury.

they billed for transportation services, and that they did so through FTI's fraudulent billing since at least 2004, fraudulent creation of C3 Transport as a separate MaineCare-approved entity in 2009, false testimony at the 2010 administrative hearing seeking recoupment of the earlier FTI billings, and then fraudulent billings from C3 Transport continuing until 2014.[17] But if there was this single overarching conspiracy of unjust enrichment at MaineCare's expense, then why is July or November of 2009 (and which month is it?) the beginning point rather than 2001 when the Zuschlags started using the problematic billing code, or 2004, the beginning of the period Bishop audited? In determining whether the latest Superseding Indictment asserts a single overarching conspiracy, I would like to hear orally from the government how its "most notable change," the allegedly false testimony at the state administrative hearing, relates to the C3 Transport conspiracy (its previous charge), and what happens to its case on Counts Three and Four if it is unable to persuade a jury that either or both of the defendants did perjure themselves at the 2010 state administrative hearing. The First Circuit Pattern Jury Instruction on conspiracy under 18 U.S.C. § 371 lays out some of the problems for a multiple-object conspiracy at Comment 6. Pattern Crim. Jury Instr. 1st Cir. 4.18.371(1) cmt. 6 (2017), http://www.med.uscourts.gov/pdf/crpjilinks.pdf. It appears that if the evidence at trial supports only a narrower conspiracy than the broader charge of the Fourth Superseding Indictment, the court will have to determine whether the

---

[17] I find it unnecessary to resolve whether the defendants' alleged production of fraudulent referral forms to federal investigators in January of 2017, Fourth Superseding Indictment ¶ 17, is part of the conspiracy or is an effort to cover up already completed crimes. Compare Gov't Resp. 17 with Defs.' Reply 1-2.

16

variance is prejudicial. See, e.g., United States v. Monserrate-Valentin, 729 F.3d 31, 50-51 (1st Cir. 2013); United States v. Glenn, 828 F.2d 855, 859-60 (1st Cir. 1987). On prejudice, is it a matter for concern that this newly charged conduct may permit a witness to testify that the defendants previously committed perjury, testimony that would probably not be otherwise admissible?[18]

Accordingly, the Clerk's Office shall set the matter for oral argument on the addition of so-called Scheme One to the Fourth Superseding Indictment.

**SO ORDERED.**

**DATED THIS 4TH DAY OF JUNE, 2018**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[18] The government has not disclosed how it plans to prove that the defendants intentionally perjured themselves. As I said earlier, one of the MaineCare representatives who the defendants say gave them permission to use the problematic billing code has died. The other apparently had no recollection in 2010. Defs.' Ex. 1 at 7. (A third MaineCare representative mentioned in the hearing officer's decision who may know something about the defendants' permission to provide the service, id. at 7 n.1, has not been mentioned by either party.)